UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARC NORFLEET, | ) | |
| | ) | |
| Petitioner, | ) | 11 C 897 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| LEE RYKER, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**M̲e̲m̲o̲r̲a̲n̲d̲u̲m̲ O̲p̲i̲n̲i̲o̲n̲ a̲n̲d̲ O̲r̲d̲e̲r̲**

Petitioner Marc Norfleet, who is serving a 59-year sentence in Illinois state prison for first degree murder, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 2. Norfleet claims that the warrant pursuant to which the police arrested him and searched his home was issued without the probable cause required by the Fourth Amendment, that the evidence obtained as a result of the search should have been suppressed, and that the case against him could not have been proved beyond a reasonable doubt without the unlawfully obtained evidence. The habeas petition is denied, and the court declines to issue a certificate of appealability.

**Background**

Because the court denies Norfleet's petition on procedural grounds, the facts underlying his conviction are largely irrelevant to the disposition of this case. The facts as found by the Appellate Court of Illinois, *see People v. Norfleet*, 1-06-3510 (Ill. App. May 19, 2009) (Doc. 16-1 at 1-16), the last state court to consider Norfleet's case on the merits, are therefore recounted here only briefly. On December 14, 2001, Norfleet and a man named Adam Schultz drove from Milwaukee to Chicago. Doc. 16-1 at 2. Norfleet had recently been prosecuted, unsuccessfully, for a drug crime in Wisconsin state court, and he knew that Schultz had assisted the prosecution

as a confidential informant. *Ibid*. On December 16, 2001, Schultz was found dead in a Chicago alley, having been shot once in the head at close range. *Id*. at 1-2; Doc. 16-10 at 22. On August 27, 2002, the police obtained and executed a "no-knock" warrant to search Norfleet's home. Doc. 16-10 at 18-20. At trial, the prosecution's theory was that Norfleet hired a hit man named Michael Johnson to murder Schultz, that Johnson fired the lethal bullet, and that Norfleet was responsible for the murder on an accountability theory. Doc. 16-1 at 2-3.

Norfleet maintains that the police affidavit filed to support the "no-knock" warrant, Doc. 16-10 at 21-26, contained false statements and was not justified by probable cause, meaning that the warrant violated the Fourth Amendment and that the ensuing search was unconstitutional. Doc. 2 at 6-10. Norfleet further maintains that much of the evidence used against him at trial, including statements by his then-girlfriend Amanda Scripture and Johnson's nephew Larry Jones, was obtained as a direct result of the unconstitutional search, and that the evidence was therefore inadmissible under the "fruits of the poisonous tree" doctrine of *Wong Sun v. United States*, 371 U.S. 471 (1963). Doc. 2 at 11-16; *see United States v. Ceccolini*, 435 U.S. 268, 273-79 (1978) (discussing the application of *Wong Sun* to witness testimony). Norfleet made these arguments to the state trial court in motions to quash his arrest and to suppress evidence. Doc. 16-2 at 38-43, 60-63; Doc. 16-10 at 2-17. The trial court rejected Norfleet's arguments and denied the motions. Doc. 16-5 at 37-38; Doc. 16-10 at 108-109.

Between his arraignment in November 2002 and the beginning of his trial in October 2006, Norfleet was represented by five attorneys. Doc. 16-1 at 4-13. In each instance, Norfleet either discharged the attorney or forced the attorney to withdraw by filing complaints with the Illinois Attorney Registration and Disciplinary Commission. *Id*. at 4-7. Norfleet conducted his trial *pro se*, and the jury convicted him. *Id*. at 13.

On direct appeal, Norfleet was represented by appointed counsel. Doc. 16-1 at 17-80, 137-158 (appellate briefs filed by Norfleet's lawyer). The lawyer argued that the state trial court violated Norfleet's Sixth Amendment right to counsel, *id*. at 22; because Norfleet does not press that claim in his habeas petition, its details are irrelevant here. Norfleet himself filed no fewer than six *pro se* appellate briefs or motions, which sought to strike his lawyer's brief, to proceed *pro se*, and to raise the Fourth Amendment claim that the trial court rejected. *E.g.*, Doc. 16-2 at 4-10, 17-33, 142-175. The state appellate court denied the *pro se* motions without addressing the merits of the Fourth Amendment claim, *e.g.*, Doc. 16-2 at 141; Doc. 16-3 at 1, affirmed Norfleet's conviction, Doc. 16-1 at 1-16, and denied his rehearing petition, Doc. 16-2 at 1.

Norfleet's lawyer then filed a petition for leave to appeal ("PLA") with the Supreme Court of Illinois, again advancing Sixth Amendment claims. Doc. 16-3 at 2, 4. Norfleet again supplemented his lawyer's submission with a series of *pro se* filings, which argued that he should have been allowed to proceed *pro se* on appeal and that his appointed counsel on appeal had rendered ineffective assistance. Doc. 16-4 at 1-3 ("Motion for Leave to Proceed Pro-Se and File Pro-Se Petition for Leave to Appeal"); *id*. at 6-13 (Norfleet's *pro se* PLA); Doc. 16-5 at 88-89 (Norfleet's petition for reconsideration). The state supreme court denied each of Norfleet's motions, *e.g.*, Doc. 16-6 at 1, 3; Doc. 16-9 at 1; Doc. 16-10 at 1, and also denied the PLA filed by Norfleet's lawyer, *People v. Norfleet*, 919 N.E.2d 361 (Ill. 2009). Norfleet then filed a petition for a writ of certiorari, which the United States Supreme Court denied. *Norfleet v. Illinois*, 558 U.S. 1015 (2009). Norfleet next filed this habeas petition, which the Warden concedes is timely. Doc. 15 at 8.

**Discussion**

## I.      Procedural Default

Norfleet argued to both the state trial court and the state appellate court that the warrant was invalid and therefore that much of the evidence against him should have been suppressed as the fruits of an illegal search.  His habeas petition advances the same claim.  The Warden contends that Norfleet failed to present that claim to the state supreme court, resulting in a procedural default.  The Warden is correct.

"A procedural default occurs where a habeas petitioner has exhausted his state court remedies without properly asserting his federal claim at each level of state court review." *Crockett v. Hulick*, 542 F.3d 1183, 1192 (7th Cir. 2008) (citation and internal quotation marks omitted); *see also Bland v. Hardy*, 672 F.3d 445, 449 (7th Cir. 2012) ("To preserve a question for federal collateral attack, a person must present the contention to each level of the state judiciary.").  In *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), the Supreme Court held that this principle requires Illinois state prisoners to fairly present in a PLA to the Supreme Court of Illinois any claims they wish to press in a federal habeas petition:

> Boerckel's amended federal habeas petition raised three claims that he had pressed before the Appellate Court of Illinois, but that he had not included in his petition for leave to appeal to the Illinois Supreme Court.  There is no dispute that this state court remedy—a petition for leave to appeal to the Illinois Supreme Court—is no longer available to Boerckel; the time for filing such a petition has long passed.  Thus, Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims.

*Id*. at 848 (citation omitted).  Citing *Boerckel*, the Seventh Circuit has articulated the fair presentment requirement in this way:

> If the [habeas] claim comes from the Illinois state courts, the petitioner must have presented each claim in the habeas petition to the Illinois Appellate Court and to the Illinois Supreme Court in a petition for discretionary review.

> As part of this requirement, a petitioner must have fairly presented both the operative facts and legal principles that control each claim to the state judiciary. A petitioner's failure to fairly present each habeas claim to the state's appellate and supreme court in a timely manner leads to a default of the claim, thus barring the federal court from reviewing the claim's merits.

*Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citations omitted); *see also Mulero v. Thompson*, 668 F.3d 529, 535-36 (7th Cir. 2012) (same). Put somewhat differently, a habeas petitioner must submit to the state appellate court and state supreme court "both the broad claim … [and] also the specific arguments and 'operative facts within that claim." *McNary v. Lemke*, 708 F.3d 905, 919 (7th Cir. 2013).

The question here is whether Norfleet fairly presented his Fourth Amendment claim to the state supreme court. The court assumes for the sake of argument that a habeas petitioner like Norfleet can meet the fair presentment requirement through *pro se* filings even where he is represented by an attorney who does not press the claim at issue, and even where the state court declines to address the merits of that claim because state procedural rules do not entitle a counseled prisoner to present additional arguments in *pro se* filings. The court therefore will examine whether Norfleet fairly presented his Fourth Amendment claim to the state supreme court either in his counseled PLA or in his *pro se* filings.

In the counseled PLA, Norfleet's attorney limited himself to the same Sixth Amendment arguments he had pressed before the state appellate court. Doc. 16-3 at 4. The counseled PLA therefore did not fairly present any Fourth Amendment claim, as Norfleet appears to recognize. Doc. 19 at 3 ("Petitioner avers that for purposes of procedural bar analysis, what is germane are the petitions *he* filed, as opposed to any petitions filed by counsel, the latter of which this Court should ignore for purposes of this analysis.").

Norfleet's *pro se* motion to proceed *pro se* in the state supreme court also says nothing about the Fourth Amendment. Doc. 16-4 at 1-3. Nor does his *pro se* PLA, which argues instead

that "[t]he Question for the IL.S.Ct. is whether the Appellate Court err[ed] in denying the SIX

petitions to proceed pro-se?" Doc. 16-4 at 6. Norfleet's "Petition for Reconsideration of Motion

to Proceed Pro-Se & File Pro-Se Petition for Leave to Appeal" also fails to mention the Fourth

Amendment; instead, Norfleet argued—probably incorrectly, *see Martinez v. Court of Appeal of*

*Cal., Fourth App. Dist.*, 528 U.S. 152, 154 (2000)—that he had a constitutional right to proceed

*pro se* on direct appeal in the state appellate court. Doc. 16-5 at 88. Indeed, Norfleet's federal

habeas petition says not that he presented his Fourth Amendment argument to the state supreme

court, but merely that he "*wished to* pursue [in the state supreme court] the arguments presented

in this [habeas] petition." Doc. 2 at 4 (emphasis added). And in the section of the habeas

petition titled "Norfleet used every means at his disposal to exhaust his state remedies on this

issue," Norfleet refers only to the state trial and appellate court proceedings; he makes no

mention of the state supreme court. *Id*. at 16-18.

In his reply brief before this court, Norfleet contends that his *pro se* filings with the state

supreme court did fairly present his Fourth Amendment claim. Norfleet "denies that the only

issue raised in his pro se petition to the Illinois Supreme Court was denial of the right to

represent himself on appeal," and "notes that implicated by, and incorporated in, his petitions to

the Illinois Supreme Court are the [Fourth Amendment] issues raised herein." Doc. 19 at 3-4.

Specifically, Norfleet points to this passage in one of his *pro se* filings:

> The problem with State Appellate Counsel Defender's appellant alleged
> appeals brief(s) is as the Appellate Court states in it[s] final decision, that
> "The Defendant does **NOT** challenge the sufficiency of the evidence of his
> guilt."

*Id*. at 10 (quoting Doc. 16-4 at 2). This refers to an insufficient evidence claim; no mention is

made of any Fourth Amendment claim. That said, Norfleet did not fairly present even the

insufficient evidence claim to the state supreme court, for as the above-quoted passage makes

clear, the reference to the "sufficiency of the evidence" came in the context of Norfleet's claim that his appellate attorney had been ineffective in the state appellate court by failing to challenge the sufficiency of the evidence.  Doc. 16-4 at 2.

A claim that one's attorney was ineffective in failing to press a given challenge is distinct from a claim asserting the underlying challenge itself; Norfleet's *pro se* PLA raised the former claim, that his appellate attorney was ineffective for failing to raise the sufficiency challenge, but not the latter, the sufficiency challenge itself.  *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) ("[A]n assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues. … [T]he fact that the ineffectiveness claim was raised at some point in state court does not mean that the state court was given the opportunity to address the underlying issue that the attorney in question neglected to raise.").  Moreover, even if Norfleet's *pro se* PLA *had* fairly presented his challenge to the sufficiency of the evidence, the insufficiency claim in his habeas petition depends entirely on the defaulted Fourth Amendment claim; the evidence was insufficient, Norfleet argues, because the fruits of the supposedly unlawful warrant should have been suppressed.  Doc. 2 at 18-19.  Thus, even putting aside procedural default, Norfleet's insufficient evidence claim fails on the merits because he defaulted the Fourth Amendment claim on which the insufficiency claim was predicated.

Norfleet's contention that he fairly presented the Fourth Amendment claim by "incorporating by reference" his lower court filings, which did contain a Fourth Amendment claim, also fails.  Norfleet says that his *pro se* filings "went on to reference on several occasions the petitions and briefs he had filed in the court of appeals and the issues contained therein, which included, *inter alia*, the fourth amendment issues he now raises before this Court."  Doc.

19 at 10. But the mere reference in one brief to an argument made in a brief filed in a lower court does not fairly present the claim contained in the lower court brief. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief … that does not alert it to the presence of a federal claim in order to find material … that does so"); *Pinkins v. Buss*, 215 F. App'x 535, 540 (7th Cir. 2007) (noting that a criminal defendant's reference to an earlier brief does not, without more, fairly present the arguments contained in that earlier brief); *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006) (holding that fair presentment "requirement is not met if a judge must go outside the four corners of the document in order to understand the contention's nature and basis"). In *Lockheart*, the Seventh Circuit held that the petitioner had procedurally defaulted his habeas claim under circumstances materially identical to Norfleet's:

> [Lockheart's] petition for leave to appeal to the Supreme Court of Illinois did not present a judicial-bias argument. Instead he asked the Supreme Court to read other documents, such as his appellate brief and his "Petition for Leave to Appeal as a Matter of Right and in the Alternative" that he had filed in support of an earlier request for review. The state judges were under no obligation to track down and peruse those documents.

443 F.3d at 929.

For these reasons, Norfleet failed to fairly present his Fourth Amendment claim to the state supreme court, thereby procedurally defaulting it.

## II.     Cause and Prejudice

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750

(1991); *see also Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) (same). These two exceptions also are available to a habeas petitioner who procedurally defaulted a claim under *Boerckel* by failing to fairly present it to each level of the state judiciary. *See Smith*, 598 F.3d at 382. "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his claim. Prejudice is established by showing that the violation of the petitioner's federal rights worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Thompkins v. Pfister*, 698 F.3d 976, 987 (7th Cir. 2012) (citations and internal quotation marks omitted). "The fundamental miscarriage of justice exception requires 'the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Smith*, 598 F.3d at 387-88 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Norfleet does not cite the fundamental miscarriage of justice exception, but he does invoke the cause-and-prejudice exception, arguing: "A sixth amendment claim for ineffective assistance of counsel, which Norfleet has thoroughly developed in this case, can constitute good cause for what would otherwise constitut[e] a procedural default by a petitioner." Doc. 19 at 11. Because Norfleet's procedural default occurred when he failed to present his Fourth Amendment claim to the state supreme court, he must mean to argue that his appellate attorney was ineffective for failing to include a Fourth Amendment claim in the counseled PLA. This argument fails because ineffectiveness of counsel in a discretionary appeal before the state supreme court does not qualify as "cause" sufficient to excuse a procedural default.

There is no constitutional right to effective assistance of counsel beyond the criminal trial and the initial appeal of right—that is, "there is no constitutional right to *any* assistance of counsel in seeking discretionary, third-tier review, and shortcomings of counsel at that stage therefore cannot violate the sixth amendment." *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (citation omitted); *see also Ross v. Moffitt*, 417 U.S. 600 (1974). And attorney errors that do not amount to ineffective assistance under the Sixth Amendment cannot satisfy the "cause" requirement. *See Brown v. Watters*, 599 F.3d 602, 609 (7th Cir. 2010) ("When preserved, meritorious claims of ineffective assistance can excuse default. A *constitutional* right to effective assistance must be the predicate to any such claim.") (citation omitted). It follows that ineffective assistance in a counseled PLA does not provide "cause" for purposes of the cause-and-prejudice analysis. *See Perez v. Pierce*, 36 F. App'x 854, 858 (7th Cir. 2002) (holding that because "a criminal defendant does not have a federal constitutional right to counsel to pursue discretionary state appeals," the habeas petitioner "cannot use ineffective assistance of appellate counsel [at the PLA stage] as the 'cause' requisite to excuse his procedural default") (citations omitted); *Anderson v. Cowan*, 227 F.3d 893, 901 (7th Cir. 2000) (same).

That would be the end of the cause-and-prejudice analysis, but for the fact that the Supreme Court last year "qualifie[d] *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings [on a claim of ineffective assistance of counsel at trial] may establish cause for a prisoner's procedural default of [such] a claim." *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012); *see also Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013) (holding that "where, as [in Texas], state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal,

[the] holding in *Martinez* applies"). This narrow exception does not help Norfleet for two reasons: the defaulted claim here alleges a Fourth Amendment violation, not ineffective assistance at trial, and the asserted "cause" is ineffective assistance in a PLA to the state supreme court, not at an initial-review collateral proceeding. *Cf. Serio v. Pfister*, 2013 WL 593824, at *6 (N.D. Ill. Feb. 14, 2013) (declining to extend *Martinez* beyond its explicit scope). Perhaps *Martinez* and *Trevino* presage further decoupling of the cause-and-prejudice analysis from the scope of the Sixth Amendment; perhaps not. *See Trevino*, 133 S. Ct. at 1922-23 (Roberts, C.J., dissenting) (quoting *Martinez*, 132 S. Ct. at 1320). The fact remains that those decisions stand as only a narrow qualification of the general rule of *Coleman*. Because this case does not fall within that exception, this court is bound to apply *Coleman*. *See Grayson v. Schuler*, 666 F.3d 450, 452-53 (7th Cir. 2012) (holding that the lower courts must apply Supreme Court precedents to cases that fall within their scope unless and until those precedents are explicitly overruled by the Supreme Court itself).

For these reasons, Norfleet has not established cause for his procedural default. This result makes it unnecessary to consider whether Norfleet could have satisfied the prejudice prong of the cause-and-prejudice analysis.

## Conclusion

Because Norfleet procedurally defaulted the Fourth Amendment and insufficient evidence claims pressed in his habeas petition, and because he has failed to show that the default should be excused, his petition is denied. Rule 11(a) of the Rules Governing Section 2254 Cases states that "[t]he district court must issue or deny a certificate of appealability [('COA')] when it enters a final order adverse to the applicant." *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir.

2011).  "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Supreme Court has described the standard applicable to cases, like this one, in which the petition is denied on procedural grounds:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. … Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Such a circumstance is present here.  The court's determination that Norfleet procedurally defaulted his Fourth Amendment claim (and thus the sufficiency claim that depends on the success of the Fourth Amendment claim) relies on the contents of Norfleet's filings with the state supreme court and on settled precedent requiring that a petitioner fairly present his claim to each level of the state judiciary.  The application of that settled law to Norfleet's case does not present difficult or close questions, and so the petition does not meet the standard for granting a COA.  The court therefore denies a COA.

July 11, 2013                                     _____
                                                 United States District Judge